## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| BARBARA AMBURGEY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Docket No. 2:06-CV-149-GZS |
| | ) | |
| ATOMIC SKI USA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER ON MOTION TO DISMISS

Presently before the Court are Defendant Amer Sports Corporation's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Docket # 7) and Defendant Atomic Austria, GmbH's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Docket # 30). For the reasons that follow, the Court hereby GRANTS the Motions.

### I.    STANDARD OF REVIEW

The personal jurisdiction of a federal court sitting in diversity is equivalent to that of a state court sitting within the forum. Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996). Thus, to establish personal jurisdiction over Defendants, Plaintiffs must demonstrate both that Maine's long-arm statute grants jurisdiction and that exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002). Because Maine's long-arm statute is coextensive with the permissible exercise of personal jurisdiction under the Constitution, the due process inquiry controls in the present case. See 14 M.R.S.A. § 704-A; Murphy v. Keenan, 667 A.2d 591, 593 (Me. 1995).[1]

---

[1] Two means of establishing jurisdiction over Defendant's person are available under the Fourteenth Amendment: specific and general jurisdiction. Plaintiffs do not suggest that either Defendant is subject to general jurisdiction. Thus, the Court will proceed solely with regard to whether specific jurisdiction exists.

As the First Circuit has noted on more than one occasion, the determination of personal jurisdiction is "more art than science." <u>Donatelli v. Nat'l Hockey League</u>, 893 F.2d 459, 468 n.7 (1st Cir. 1990) (quoted in <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 617 (1st Cir. 2001)). Nonetheless, the First Circuit has also instructed courts faced with a challenge to personal jurisdiction to look at three general factors:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

<u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1389 (1st Cir. 1995) (citations omitted).[2] Nonetheless, "a failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness: the gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled." <u>Id.</u> at 1394 (citations omitted).

Ultimately, it is Plaintiffs' burden to prove that personal jurisdiction exists in a given forum. <u>Id.</u> at 1387. Under the commonly employed prima facie standard, the court considers "only whether the plaintiff[s] [have] proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." <u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d 671, 675 (1st Cir. 1992). In making this showing, "[p]laintiffs may not rely on unsupported allegations in their pleadings, but are obliged to adduce evidence of specific facts." <u>Platten v. HG Bermuda Exempted Ltd.</u>, 437 F.3d 118, 134 (1st Cir. 2006) (internal citations and quotations

---

[2] The "gestalt factors" include:

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.

<u>Id.</u> at 1394.

omitted).  The Court accepts sufficiently supported facts as true and views them in the light most favorable to Plaintiffs.  Daynard, 290 F.3d at 51.  The Court must also accept as true any uncontested facts put forward by a Defendant.  Id.  In accordance with this standard, the Court sketches the relevant factual background below.

## II.    BACKGROUND

On December 8, 2002, Barbara Amburgey was injured while downhill skiing at Sunday River Ski Area in Newry, Maine.  She asserts that her Atomic Demo SX-11 skis and Atomic CENTRO 412 bindings malfunctioned, causing her ski boot to release unexpectedly from its binding.  As a result of the accident, Ms. Amburgey is paralyzed from the shoulders down and remains a quadriplegic.

On August 11, 2006, Ms. Amburgey and her husband, Leonard Amburgey, filed a five count complaint in the Superior Court for Oxford County, Maine.  The complaint asserts causes of action for strict liability (Count I), breach of warranty (Count II), negligence (Count III), loss of consortium (Count IV) and punitive damages (Count V).  The complaint names Atomic Austria, GmbH ("Atomic Austria"), Amer Sports Corporation ("Amer Sports") and Atomic Ski USA, Inc. ("Atomic Ski USA") as defendants.  On September 1, 2006, Defendant Atomic Ski USA removed the case to federal court (Docket # 1).  On November 20, 2006, Defendant Amer Sports moved to dismiss for lack of personal jurisdiction (Docket # 7).  On March 14, 2007, Defendant Atomic Austria moved to dismiss for lack of personal jurisdiction (Docket # 30).  As relevant to the pending personal jurisdiction questions, some basic facts regarding the two foreign defendants are not in dispute:

Atomic Austria is an Austrian company whose principal place of business is in Altenmarkt, Austria.  Atomic Austria manufactured the equipment Ms. Amburgey was using at

the time of the accident.  Amer Sports is a company whose principal place of business is in Helsinki, Finland.  Amer Sports is the ultimate parent holding company of Atomic Austria and Atomic Ski USA, the other two defendants in this case.  Neither Atomic Austria nor Amer Sports maintains a place of business in Maine nor has any employees or agents operating in Maine.

## III.    DISCUSSION

"'[The] constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum contacts' in the forum State.'"  Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 108-109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  Both Amer Sports and Atomic Austria contend that they lack the requisite minimum contacts with Maine and thus their dismissal from this case is proper for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  The Court will consider each defendant in turn.

## A.    Atomic Austria

Due process requires that the Court make three inquiries when a defendant challenges the exercise of specific personal jurisdiction.  Sawtelle, 70 F.3d at 1389.  First, under the relatedness inquiry, the Court must consider whether Plaintiffs' claims "directly arise[] out of, or relate[] to, the defendant's forum-state activities."  Id.  The First Circuit has stated that this inquiry "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum."  Id.  This prong is informed by the concept of foreseeability.  Nowak, 94 F.3d at 715.  Here, Atomic Austria manufactured the product that reached the forum state and is the alleged cause of the injury, which is sufficiently foreseeable to satisfy the relatedness prong of the inquiry.  As this court has previously stated, "neither the

Supreme Court nor the Court of Appeals for the First Circuit has expressed concern about the causal link in cases analyzing the stream-of-commerce theory of personal jurisdiction. Rather, in these cases, the jurisdictional hitch comes from the requirement of purposeful availment." Unicomp, Inc. v. Harcros Pigments, Inc., 994 F. Supp. 24, 26 (D. Me. 1998) (citing Asahi Metal Industry Co., 480 U.S. 102; Boit, 967 F.2d 671).

Second, the Court must consider whether Defendant Atomic Austria's contacts with Maine represent a purposeful availment by Atomic Austria of the privilege of conducting business in the state. "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum state. Our focus is on whether a defendant has engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." Sawtelle, 70 F.3d at 1391 (internal citations and quotations omitted). In undertaking this inquiry, the Court considers voluntariness and foreseeability. Nowak, 94 F.3d at 716. "The defendant's contacts with the forum state must be voluntary - that is, not based on the unilateral actions of another party or a third person. In addition, the defendant's contacts with the forum state must be such that he should reasonably anticipate being haled into court there." Id.

Plaintiffs assert that by placing products in the stream of commerce, establishing a dealer network and maintaining a website, Atomic Austria engaged in purposeful activity related to the forum. It is uncontested that Atomic Austria manufactured the equipment Ms. Amburgey was using at the time of the accident. Nonetheless, all Atomic Austria employees are based in Austria or other countries in Europe and none have visited Maine to promote the products at issue in this case or to solicit sales. It is clear that "[t]he placement of a product into the stream

of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Asahi Metal Industry Co., 480 U.S. at 112.  Instead, Plaintiffs must put forth some evidence of "additional conduct of the defendant . . . indicat[ing] an intent or purpose to serve the market in the forum State."  Id.  Plaintiffs claim two bases for additional conduct on the part of Atomic Austria sufficient for this Court to maintain personal jurisdiction: the dealer network and a website.

Plaintiffs assert that Atomic Austria has purposefully availed itself of the privilege of conducting business in Maine through its targeted distribution network.  Specifically, Plaintiffs claim that Atomic Austria served the Maine market through its extensive dealer network and exclusive distributor.  Conversely, the record before the Court supports that although Atomic Austria manufactures alpine ski equipment, it has not sold or shipped its products to Maine.  Instead, Atomic Austria sells Atomic branded products to a single purchaser in the United States: Defendant Atomic Ski USA, which is based in New Hampshire.[3]  Atomic Austria receives the orders for goods from Atomic Ski USA in Austria and ships the products to Atomic Ski USA.  Defendant Atomic Ski USA then distributes its products to independent dealers throughout the United States, including dealers in Maine.  Atomic Austria, however, is not involved with the distribution network beyond Atomic Ski USA; Atomic Austria has no control over the selection of individual distributors or the actual distribution of the products.[4]   Thus, this case is distinguishable from Unicomp v. Harcros Pigments, Inc., where the Court found that the manufacturer itself established a distribution network that was known to serve Maine.  994 F. Supp. at 26-27.  Here, Defendant Atomic Austria has not established a distribution network nor

---

[3] Amer Holding Company is the parent holding company of Atomic Ski USA.  Amer Sports, in turn, is the parent holding company of Amer Holding Company.
[4] Plaintiffs also assert that Atomic Austria supports the dealers through Atomic Austria's website.  As stated below, however, the website is under the control of Atomic Ski USA.

is there evidence beyond mere conjecture that Atomic Austria knew its products would reach Maine.[5]

Plaintiffs next claim that Atomic Austria's website establishes jurisdiction. Atomic Austria maintains a website, available to individuals in Maine, which provides information about the company, its products and services. However, no products are available for purchase through the website maintained by Atomic Austria. Instead, a person who enters the Atomic website must first choose a country. When an individual chooses "USA," he or she is then connected to Atomic Ski USA's separate website, which is maintained and located in Portsmouth, New Hampshire by Atomic Ski USA and its media consultant. Once an individual reaches the website maintained by Atomic Ski USA, the individual can then obtain information about Atomic, its products, request a catalog and find a dealer, among other options.

In short, the website actually maintained by Atomic Austria is a passive website accessible in Maine, as in all other jurisdictions, where no products are available for purchase. A passive website is insufficient to establish that Atomic Austria voluntarily and purposefully availed itself of the privilege of conducting business in Maine. See e.g., Maynard v. Philadelphia Cervical Collar Co., 18 Fed. Appx. 814, 816 (Fed. Cir. 2001) ("A passive website is insufficient to establish purposeful availment for the purpose of due process."); Mink v. AAAA Dev. LLC, 190 F.3d 333, 336-37 (5th Cir. 1999) (A website is passive even though it posts information regarding a company's products and services, provides the user with printable forms and displays the company's contact information.).

---

[5] Throughout the briefing on these motions, Plaintiffs claimed that Atomic and Amer Sports knew the product would reach Maine. Plaintiffs state that in 2002, 825,000 pairs of Atomic branded skis and 540,000 pairs of Atomic branded bindings were sold world-wide. That same year, Atomic branded products had a sixteen percent share of the market in North America. Thus, Plaintiffs argue, Atomic branded products *must* have reached Maine.

At its base, Plaintiffs assert a classic stream of commerce theory: that Atomic Austria knew that its products would reach Maine. Even assuming that Atomic Austria had knowledge that the stream of commerce would take its products into Maine, mere awareness is insufficient to constitute purposeful availment. Alers-Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 85 (1st Cir. 1997) ("Even assuming that [the manufacturer] had specific knowledge that the stream of commerce would move its tire rims into Puerto Rico . . . this awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts."). The additional conduct proffered by Plaintiffs fails to show that Defendant Atomic Austria had an "intent or purpose to serve the market" in Maine. Asahi Metal Industry Co., 480 U.S. at 112. Instead, Plaintiffs' arguments highlight the lack of contacts that Atomic Austria has with this forum. Thus, the minimum contacts necessary to establish personal jurisdiction over Defendant are totally absent. Because the Court finds that Defendant has not engaged in purposeful activity related to the forum, the Court need not consider the gestalt factors. Sawtelle, 70 F.3d at 1394. The exercise of personal jurisdiction over Defendant Atomic Austria would not comport with due process. Therefore, Atomic Austria's Motion to Dismiss for Lack of Personal Jurisdiction (Docket # 30) is GRANTED.

In the alternative, Plaintiffs request jurisdictional discovery to develop additional facts. The First Circuit has stated that "diligent plaintiff[s] who sue[] an out-of-state corporation and who make[] out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Swiss Am. Bank, Ltd., 274 F.3d at 625. In addition, Plaintiffs must have been diligent in preserving their rights to jurisdictional discovery, which includes "the obligation to present

facts to the court which show why jurisdiction would be found if discovery were permitted." Id. at 626.

Plaintiffs have failed to provide facts beyond vague allegations and questions regarding the corporate form, which show why jurisdiction would be found with discovery. Given the dearth of contacts that Atomic Austria maintains with the forum state, discovery is unlikely to be useful in establishing jurisdiction. Thus, the Court exercises its "broad discretion to decide whether discovery is required" and denies Plaintiffs' request. Id.

**B.      Amer Sports**

Defendant Amer Sports similarly moves to dismiss based on lack of personal jurisdiction. Indeed, Amer Sports, as the parent holding company of Atomic Austria and Amer Holding Company, is one step further removed from the products and accident that form the base of this case. Nonetheless, the Court will engage in the requisite analysis.

Under the relatedness inquiry, the Court must consider whether the Plaintiffs' claims arise out of, or relate to, Defendant's in-forum activities. Sawtelle, 70 F.3d at 1389. Construing the facts in the light most favorable to Plaintiffs, the Atomic branded skis and related equipment that form the basis for this case were manufactured by a subsidiary of Amer Sports, namely Atomic Austria. Essentially, Plaintiffs assert that Amer Sports, through its subsidiary, placed a product in the stream of commerce that eventually injured Ms. Amburgey. In short, while the stream of commerce theory may be sufficient to establish the relatedness prong for a manufacturer, see, e.g., Unicomp, Inc., 994 F.Supp. at 25-26, as the parent holding corporation, Amer Sports' contacts with the forum state are "attenuated and indirect" and are thus inadequate to establish personal jurisdiction. See United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992) ("[W]e steadfastly reject the exercise of personal

jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect.").

Furthermore, Atomic Austria and Atomic Ski USA's contacts with Maine will not establish personal jurisdiction over Amer Sports.  See Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980) ("The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary.").  It is important to note that Amer Sports does not directly own either of other Defendants; rather Amer Sports is a parent holding company of these two independent corporations.

The Court will not easily or readily disregard the corporate form.   "There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary."  Id.  Under Maine law, "[a] court may pierce the corporate veil if a plaintiff establishes that: (1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence."  State v. Weinschenk, 868 A.2d 200, 207 (Me. 2005) (internal citations and quotations omitted).  Plaintiffs have alleged that "Amer Sports is much more than a passive corporate owner of its subsidiaries," (Pls.' Opp'n to Mot. to Dismiss of Amer Sports Corporation (Docket # 14) at 12) and that "Amer Sports maintained a close (and perhaps controlling) relationship over its subsidiaries."  (Id. at 13).  In support, Plaintiffs point to the fact that the Amer Sports' President and Chief Financial Officer sit on the boards of each of its subsidiaries, including Atomic Austria.   Nonetheless, a parent corporation's placement of individuals on the boards of its subsidiaries and Plaintiffs' unsupported and vague allegations of control fall far short of the clear and convincing evidence required to pierce the corporate veil.

10

Thus, Atomic Austria and Atomic Ski USA's contacts with Maine will not be attributed to the parent corporation, Amer Sports.

Even assuming that Amer Sports somehow satisfied the relatedness inquiry, the Court would also have to find that Amer Sports had purposefully availed itself of the privilege of conducting activities in Maine.  To support such a finding, Plaintiffs must establish that 'the defendant's in-state contacts [] represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." United Elec., Radio & Mach. Workers, 960 F.2d at 1089.  Placing a product into the stream of commerce, alone, is insufficient to establish purposeful availment.  Asahi Metal Industry Co., 480 U.S. at 112.  Instead, Plaintiffs must put forth some evidence of "additional conduct of the defendant . . . indicat[ing] an intent or purpose to serve the market in the forum State." Id.

First, Plaintiffs claim that Amer Sports designs products to serve skiers and the ski industry in Maine.  Like Atomic Austria, Amer Sports maintains a website available to individuals in Maine.  The website touts the corporation's commitment to "designing" and "manufacturing" the industry's best products.  In addition, Plaintiffs point to statistics available from Amer Sports' website and publicly available documents.  Specifically, Plaintiffs state that in 2002, 825,000 pairs of Atomic branded skis and 540,000 pairs of Atomic branded bindings were sold world-wide.  That same year, Atomic branded products had a sixteen percent share of the market in North America.  Thus, Plaintiffs argue, Amer Sports targeted the Northeast United States, including Maine, because the Northeast is the second most popular ski region in the United States.  Plaintiffs conclude that: "Given that Amer Sports targets the U.S. as one of its largest markets for alpine ski equipment and Maine has a large ski industry, the record evidence

supports the inference that Amer Sports' design, manufacture, research and development activities target Maine as a market for its alpine ski products." (Pls.' Opp'n to Mot. to Dismiss of Amer Sports Corporation (Docket # 14) at 10).

The inferences and assumptions in Plaintiffs' argument do not establish purposeful availment. Rather, the argument is akin to one found insufficient in Alers-Rodriguez v. Fullerton Tires Corp., where the First Circuit declined to find personal jurisdiction in Puerto Rico over a corporation that manufactured a component of sand tires elsewhere. 115 F.3d at 85. The First Circuit stated:

> Subjecting a manufacturer to suit in Puerto Rico merely because its product is designed for use in sand would offend the constitutional principles that limit a state's authority to exercise jurisdiction. Under such a regime, a manufacturer of life preservers automatically would be subject to suit in every jurisdiction whose boundaries included an ocean, a river, a stream, a lake, a pond, or a swimming pool. By the same token, a manufacturer of air conditioners would be subject to suit worldwide. This surely is not the law.

Id. Plaintiffs' argument fails to show how Amer Sports purposefully engaged in any contact with the forum state. Instead, the argument could apply with equal force to any state in the Northeast or that touches the Rocky Mountains.

Second, Plaintiffs assert that Amer Sports actively promotes Atomic branded products in the United States and in Maine. In support, Plaintiffs claim that Amer Sports hires celebrity athletes, such as Bode Miller, to promote its products throughout the United States. However, there is no evidence before the Court that Amer Sports, or its celebrity athletes, have promoted the products manufactured by Atomic Austria in the state of Maine. See Sawtelle, 70 F.3d at 1393 (stating that "to treat the [law firm's] general statement in Martindale-Hubbell as a sufficiently direct 'targeting' of New Hampshire would, in effect, embrace the 'stream of commerce' theory of personal jurisdiction which this Court has already rejected"). In addition,

Plaintiffs state that Amer Sports promotes the Atomic brand through its website.  The website touts the corporation's commitment to "designing" and "manufacturing" the industry's best products while also discussing its world-wide distribution network.  Nonetheless, no products can be purchased on Amer Sports' website.  As stated above, a passive website, available for viewing in the forum state, is insufficient to establish that Amer Sports purposefully availed itself of the privilege of conducting business in the state of Maine.  See Maynard, 18 Fed. Appx. at 816; Mink, 190 F.3d at 336-37.

Finally, Plaintiffs claim that Amer Sports has purposefully availed itself of the privilege of doing business in Maine through its distribution network.  The Court previously found that the distribution network was insufficient to establish purposeful availment on behalf of Atomic Austria.  Here, Amer Sports is one step removed from both Atomic Austria and Atomic Ski USA, and Plaintiffs have not presented clear and convincing evidence that the Court should pierce the corporate veil.

Therefore, the Court finds that the Amer Sports has not "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable."  Sawtelle, 70 F.3d at 1391.  Because the Court finds that Defendant has not engaged in purposeful activity related to the forum, the Court need not consider the gestalt factors.  Id. at 1394.  Plaintiffs have failed under the prima facie standard to put forward evidence, that if credited, is sufficient to support findings of all facts essential to personal jurisdiction.  Rather, Plaintiffs' arguments emphasize that Amer Sports lacks the requisite minimum contacts to make the exercise of personal jurisdiction over the Defendant in Maine comport with due process.  Thus, the Court GRANTS Amer Sports' Motion to Dismiss for Lack of Personal Jurisdiction (Docket # 7).

In the alternative, Plaintiffs request jurisdictional discovery to develop additional facts. Under the standard articulated above, Plaintiffs have failed to state a colorable claim to personal jurisdiction over Amer Sports or to present facts to show how jurisdictional discovery would lead to personal jurisdiction. Swiss Am. Bank, Ltd., 274 F.3d at 625-26. Thus, further discovery is unlikely to be useful in establishing that Plaintiffs' claims are sufficiently related to Defendant's in-forum contacts, that Defendant Amer Sports purposefully availed itself of the privilege of doing business in Maine or to provide a basis to pierce the corporate veil. Thus, the Court exercises its broad discretion and denies Plaintiffs' request. See id.

## IV.    CONCLUSION

Therefore, the Court GRANTS the Motions to Dismiss for Lack of Personal Jurisdiction (Docket #s 7 & 30). To the extent that Plaintiffs requested oral argument and/or hearings with regard to the above motions, the Motion (Docket # 43) is DENIED.

**SO ORDERED.**

  /s/ George Z. Singal
United States Chief District Judge

Dated this 17th day of May 2007.